# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| FIRST NATIONAL BANK OF SIOUX FALLS, as Personal Representative for the Estate of TRAVIS ALBERT CARLSON, | CV 18-111-BLG-TJC |
| Plaintiff, | **ORDER** |
| vs. | |
| THE ESTATE OF ERIC RYAN CARLSON, and GRINNELL MUTUAL REINSURANCE COMPANY, | |
| Defendants. | |

Plaintiff First National Bank of Sioux Falls ("First National"), as Personal Representative for the Estate of Travis Albert Carlson, filed this action against Defendants Estate of Eric Ryan Carlson and Grinnell Mutual Reinsurance Company ("Grinnell"), alleging various causes of action related to the death of Travis Carlson. (Doc. 1.) First National's Second Amended Complaint (Doc. 33) alleges two claims against Grinnell relevant to the instant motion: breach of contract (Count 5) and declaratory relief (Count 6). (Doc. 33 at 9-10.)

Pending before the Court is Grinnell's Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 41.) For the following reasons, the Court orders that the motion to dismiss be GRANTED.

1

# I.  Factual Background[1]

"In ruling on a motion to dismiss for lack of personal jurisdiction, a court may consider declarations, discovery materials, and uncontroverted allegations in the complaint."  *Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*, 2015 WL 6689572, *3 (E.D. Cal. Oct. 30, 2015) (citing *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F.Supp. 711, 714 (C.D. Cal. 1996)).  Therefore, for purposes of the instant motion, the Court accepts as true the uncontroverted facts from First National's Second Amended Complaint.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  The Court will also consider the declarations and discovery materials which have been submitted by the parties, where relevant.

Travis Carlson was a resident of South Dakota.  He was in the fencing business and frequently traveled to Montana for work.  On October 19, 2017, Travis was building a fence on a ranch in Carter County, Montana, which borders South Dakota.  Travis's twin brother, Eric Carlson, drove onto the property and confronted Travis.  Travis attempted to flee from Eric in his vehicle, but his vehicle was overtaken by Eric's vehicle.  The two vehicles collided and came to a stop.  Eric then shot and killed Travis.

---

[1] Pleadings and uncontroverted allegations are taken from First National's Second Amended Complaint.  First National withdrew its third amended complaint on July 19, 2019.  (Docs. 45 & 46.)

Travis carried a business auto insurance policy with Grinnell (the "Policy"), for the period of June 25, 2017 to June 25, 2018.  Travis was the named-insured under the Policy, which provided $1,000,000 in uninsured and underinsured motorist coverage.  First National alleges Travis's estate is entitled to receive benefits under the Grinnell policy, because his injuries arose out of Eric's use of an uninsured or underinsured vehicle.

Grinnell has filed the present motion to dismiss under Fed. R. Civ. P. 12(b)(2) on the basis that the Court lacks personal jurisdiction.

## II.    Legal Standard

Personal jurisdiction is a court's power over the parties in a proceeding. *See Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 443 P.3d 407, 412 (Mont. 2019) *cert. granted sub nom. Ford Motor Co. v. Mt Eighth Dist. Court*, No. 19-368, 2020 WL 254155 (U.S. Jan. 17, 2020).  The plaintiff bears the burden of demonstrating that jurisdiction is appropriate when a defendant moves to dismiss a complaint for lack of personal jurisdiction.  *Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig.)*, 715 F.3d 716, 741 (9th Cir. 2013) (internal citations omitted).  When the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts.  *Schwarzenegger*, 374 F.3d at 800.  A court's duty is to inquire into whether the plaintiff's pleadings and affidavits

make a prima facie showing of personal jurisdiction, accepting the plaintiff's allegations as true. *Id.* Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true. *Id.* (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.*

To exercise personal jurisdiction over a non-resident defendant in a diversity case, a federal court must make the following determinations: (1) whether an applicable state rule or statute confers personal jurisdiction over the defendant; and (2) whether assertion of jurisdiction comports with constitutional principles of due process. *Data Disc Inc. v. Systems Tech. Assocs.*, 557 F.2d 1280, 1286 (9th Cir. 1977).

With respect to the first inquiry, this Court is bound to look to Montana law. *Hayword v. Travelers Indem. Co. of Am.*, 2006 WL 2860588 *2 (D. Mont. 2016). The Montana Supreme Court applies a similar two-step test to determine whether a nonresident defendant is subject to a Montana court's jurisdiction. *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 17 (Mont. 2015). First, the court determines whether personal jurisdiction exists under Montana's long-arm statute, M.R.Civ.P. 4(b)(1). *Id.* "Personal jurisdiction may exist under Rule 4(b)(1) in one of two ways: a party may be 'found within the state of Montana'

and subject to general jurisdiction, or the claim for relief may arise from any of the acts listed in Rule 4(b)(1)(A-G) and create specific jurisdiction for the purpose of litigating that particular claim." *Id.* If jurisdiction exists under the statute, the Court then determines whether the exercise of jurisdiction comports with due process. If personal jurisdiction is not found under the statute, however, "further analysis under the second part of the test is unnecessary." *Id.*

Montana Rule of Civil Procedure 4(b)(1) reads, in pertinent part:

All persons found within the state of Montana are subject to the jurisdiction of Montana courts. Additionally, any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:

(A) the transaction of any business within this state; […]
(D) contracting to insure any person property, or risk located within Montana at the time of contracting[.]

M.R.Civ.P (4)(b)(1). The first sentence of Rule 4(b)(1) establishes the requirements for general jurisdiction and the remainder establishes the requirements for specific jurisdiction. *Cimmaron Corp. v. Smith*, 67 P.3d 258, 260 (Mont. 2003) (*citing Bi-Lo Foods Inc. v. Alpine Bank, Clifton*, 955 P.2d 154, 157 (Mont. 1998)).

General personal jurisdiction is premised on a defendant's relationship to the forum state. *Ford Motor Co.*, 443 P.3d at 412. "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents

5

underlying the claim occurred in a different state." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S.Ct. 1773, 1780 (2017) (emphasis in original). In order to establish general jurisdiction over foreign corporations, their affiliations with the state must be "so 'continuous and systematic' as to render them essentially at home in the forum state." *BNSF Ry. Co. v. Tyrrell*, _____ U.S. at _____, 137 S. Ct. 1549, 1558 (2017).

Specific personal jurisdiction, on the other hand, is premised on both the defendant's relationship to the forum and the cause of action. *Ford Motor Co.*, 443 P.3d at 412. Specific jurisdiction is more limited, and requires the controversy be directly related to the defendant's contacts with the forum. *Bristol-Myers*, 137 S.Ct. at 1780.

If specific jurisdiction is found, then a determination of whether specific jurisdiction is proportional with the defendant's due process rights under federal law must be made. *Bedrejo v. Triple E Can. Ltd.*, 984 P.2d 739, 742 (Mont. 1999) (*citing Simmons v. State*, 670 P.2d 1372, 1376–77 (Mont. 1983); *Grizzly Sec. Armored Express, Inc. v. Armored Group, LLC*, 255 P.3d 143, 149 (Mont. 2011)). The Ninth Circuit has developed the following three-part test to assess whether the exercise of specific jurisdiction comports with due process:

> (1) the non-resident defendant must purposefully direct his activities
> or consummate some transaction with the forum or resident thereof;
> or perform some act by which he purposefully avails himself of the

privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802; *Simmons Oil Corp. v. Holly Corp.*, 796 P.2d 189, 193 (Mont. 1990);[2] *Ford Motor Co.*, 443 P.3d at 413.

## III. Discussion

Grinnell argues first there is no general jurisdiction because it is not at home in Montana, nor did it consent to jurisdiction there. (Doc. 42 at 12.) Second, Grinnell argues there is no specific jurisdiction because no connection exists between Grinnell's Montana activities and First National's breach of contract claim. (*Id.* at 13.)

First National advances several arguments in response as to both general and personal jurisdiction. (Doc. 47 at 9-12.) With respect to general jurisdiction, First National argues that general personal jurisdiction exists because Grinnell has expressly consented to personal jurisdiction through Montana's reinsurance statutory scheme, and because Grinnell gave implied consent through its

---

[2] The Montana Supreme Court adopted this approach in *Simmons Oil Corp.*, 796 P.2d 189 (Mont. 1990).

significant contacts with the State of Montana. (*Id.* at 9-10.) First National also asserts that general jurisdiction exists due to Grinnell's continuous and systematic contacts with the State of Montana. (*Id.* at 11-12.)

With respect to specific jurisdiction, First National argues jurisdiction exists because Grinnell extended coverage to Travis for the entire United States, including Montana; it knew that two drivers listed on the policy lived in Montana and would be driving in Montana; and further knew Travis's business operations extended into Montana. (*Id.* at 10-11.)

The Court will first address the parties' general and specific jurisdiction arguments before turning to First National's consent argument.

## A.     General Personal Jurisdiction

A corporation is at home where it is incorporated or maintains its principal place of business. *DeLeon v. BNSF Ry. Co.*, 426 P.3d 1, 4–5 (Mont. 2018) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014)). In an "exceptional case," however, "a corporate defendant's operation in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Tyrrell*, 137 S.Ct. at 1558 (quoting *Daimler*, 571 U.S. at 138-39, n. 19). In *Daimler*, the United States Supreme Court noted that "essentially at home" is "comparable to a domestic enterprise in that State." *Daimler*, 571 U.S. at 133 n.11; *see e.g. Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) (state

forum properly exercised jurisdiction over foreign corporation that relocated to the forum state during a time of war).

Grinnell states that it is headquartered and incorporated in Iowa, and thus is not "at home" in Montana. (Doc. 42 at 13.) Grinnell proffers the affidavit of Kevin Farrell, Grinnell's Vice President of Reinsurance, who attests that Grinnell is incorporated in Iowa and maintains its principal place of business there. (Doc. 43-1 at ¶ 4.) First National does not advance any argument to the contrary, and thus concedes that general jurisdiction is not established by Grinnell's place of incorporation and principal place of business.

First National nevertheless argues that Grinnell's affiliations with Montana are so continuous and systematic that it is essentially at home in the state. (Doc. 47 at 29.) In support, First National emphasizes that Grinnell is an accredited reinsurer[3] in the state of Montana, which gives rise to multiple statutory obligations to the Montana Commissioner of Securities and Insurance. First National also points out that nine insurance companies in Montana sell Grinnell insurance, and that Grinnell's website represents that the company is a "valued member of the Montana business community" and "We Live Where You Live" as a "local 'neighbor.'" (*Id.* at 29-31 (citing Docs. 47-7, 47-8).)

---

[3] Reinsurance is a contract between insurers whereby one indemnifies the other against loss or liability. 1 Couch on Ins. § 1:33 Reinsurance (December 2019).

In response, Grinnell again relies on the affidavit of Kevin Farrell to show it is not "essentially at home" in Montana. (Doc. 48 at 5.) Farrell states that Grinnell did not employ anyone in Montana until 2018, when only a single employee was hired and constituted 0.0012 percent of its company-wide workforce. (Doc. 43-1 at ¶¶ 6-7, 9.) Next, Farrell avers that the company's gross written premiums in Montana never exceeded one percent of its total gross written premiums. (*Id.* at ¶¶ 11-14.) Lastly, Farrell attests that the company did not issue a single direct policy (like Travis Carlson's policy) to customers in Montana, instead only issuing reinsurance. (*Id.* at ¶¶ 15-17.)

Grinnell then contrasts the nature of its contacts in Montana with those found to be insufficient in *Daimler*. (Doc. 42 at 14.) In *Daimler*, the U.S. Supreme Court rejected the argument that the contacts of the German automobile manufacturer's subsidiary in California – Mercedes-Benz USA, LLC – established general personal jurisdiction over Daimler. The Court made this determination despite that fact that Mercedes-Benz USA was the largest supplier of luxury automobiles in California and accounted for 2.4 percent of Daimler's worldwide sales. *Daimler*, 571 U.S. at 123, 148 (Sotomayor, J., concurring: "MBUSA's California sales accounted for 2.4% of Daimler's worldwide sales, which were $192 billion in 2004. And 2.4% of $192 billion is $4.6 billion, a considerable sum by any measure. MBUSA also has multiple offices and

facilities in California, including a regional headquarters.")  The Court found these extensive contacts to be insufficient and clarified that general jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide," because a corporation operating in multiple places "can scarcely be deemed at home in all of them."  *Id.* at 139 n.20.

Grinnell also relies on *Tyrrell*, again for the proposition that a company with a much larger footprint in Montana than Grinnell was not "essentially at home."  In *Tyrrell*, the U.S. Supreme Court reversed the Montana Supreme Court's holding that Montana courts have general personal jurisdiction over Burlington Northern Santa Fe Railway ("BNSF") under the Federal Employers' Liability Act and Montana's long arm statute, M. R. Civ. P. 4(b)(1).  *Tyrrell*, 137 S. Ct. at 1558-1559; *see also Tyrrell v. BNSF Ry. Co.*, 373 P.3d 1 (Mont. 2016) *rev'd and remanded*, 137 S. Ct. 1549 (2017).  The U.S. Supreme Court found that, despite BNSF's more than 2,000 miles of track and 2,000-plus employees in Montana, it was not essentially at home in the state.  *Tyrrell*, 137 S. Ct. at 1554, 1559.  The Court made clear that BNSF business in Montana subjected the railroad to specific personal jurisdiction "on claims related to the business it does in Montana.  But in-state business … does not suffice to permit the assertion of general jurisdiction over claims … that are unrelated to any activity occurring in Montana."  *Id.*

Comparing the extensive contacts of *Daimler* and *BNSF* with the forum state in those cases, with Grinnell's contacts with the state of Montana, it is clear that Grinnell is not "essentially at home" in Montana. None of Grinnell's Montana contacts advanced by First National approach the level necessary to establish general jurisdiction.

First, the statutory provisions relative to Grinnell's obligations to the State of Montana pertain to reinsurance and are specific to that particularized insurance business. Mont. Code Ann. § 33-2-1216. The state's reinsurance statutes simply authorize and regulate insurers which sell reinsurance in the state. The fact that Grinnell is authorized to sell reinsurance in the state, or that it conducts business within the state, is not sufficient to establish general jurisdiction. As *Daimler* and *Tyrrell* clearly demonstrate, simply conducting in-state business is not sufficient to permit the assertion of general jurisdiction. Thus, Grinnell's reinsurance obligations do not speak to the extent of Grinnell's business operations in Montana so as to illustrate substantial, continuous, and systematic affiliations.

Additionally, First National's assertions that Grinnell "holds itself out as being located in Montana" and "sells insurance directly" from at least nine offices does not provide support for its general jurisdiction argument. (Doc. 47 at 30 (citing to Docs. 47-6; 47-7).) A closer look at First National's citations shows Grinnell's announcement in its 2015 Annual Report that it was a "tremendously

successful year for the *Reinsurance* marketing team" by welcoming six new Montana mutuals into "the Grinnell Mutual family," which "marks the beginning of our entrance into the state of Montana." (Emphasis added) (Doc. 47-7 at 13.) Grinnell's intent to do business in Montana is indisputable, but First National has not shown that Grinnell bought, owns, opened, or franchised the six new offices, or otherwise was establishing substantial, continuous, and systematic activities to the extent of being at home.

In *Daimler*, MBUSA had multiple offices and facilities in California, including a regional headquarters. *Daimler*, 571 U.S. at 148 (Sotomayor, J., concurring). In *Tyrrell*, BNSF had in excess of 2,000 employees and 2,000 miles of trackage. *Tyrrell*, 137 S. Ct. at 1554. In contrast, Grinnell had no employees in the state until 2018; even then, it had only a single employee in Montana, comprising 0.0012 percent of its company-wide workforce. (Doc. 43-1 at ¶¶ 6-7, 9.) Further, Grinnell asserts that its Montana business amounted to less than one percent of its gross each year between 2015 and 2018. (*Id.* at ¶¶ 10-14.) The Court finds that these activities fall far short of establishing general jurisdiction.

Lastly, the Court finds First National's reliance on Grinnell's web-based representations that they "live where you live" and function as a "neighbor" to be insufficient. The representations derive from Grinnell's website, which states in full:

> Having neighbors you can rely on is invaluable. We work with 250 local mutual and more than 1,600 local independent agencies in Illinois, Indiana, Iowa, Minnesota, Missouri, Montana, Nebraska, New York, North Dakota, Ohio, Oklahoma, Pennsylvania, South Dakota, and Wisconsin.

(Doc. 47-8 at 1.) First National fails to differentiate Montana from the other 13 states listed, and Grinnell obviously cannot be considered at home in each of these jurisdictions. This advertisement thus offers little support for the assertion that Grinnell is at home in the state of Montana.

First National has not advanced evidence in totality that shows Grinnell's entrance into Montana resulted in it being "essentially at home" in the state. Therefore, Grinnell is not subject to general personal jurisdiction under Rule 4(b)(1).

## B.     Specific Personal Jurisdiction

As discussed above, if general jurisdiction is lacking, specific personal jurisdiction may be established by showing that the particular claim for relief arose out of the commission of any of the acts listed in M.R.Civ.P. 4(b)(1)(A)-(G). First National relies on two provisions under this Rule. It argues that Grinnell's transaction of business within Montana subjects Grinnell to jurisdiction under Rule 4(b)(1)(A). (Doc. 47 at 21-22.) First National also asserts that Grinnell is subject to jurisdiction under Rule 4(b)(1)(D), by

contracting to insure property or risk located within Montana at the time of contracting. (*Id.*)

Grinnell argues that there is no connection between the breach of contract claim and Grinnell's Montana contacts. (Doc. 42 at 22-23.) In order to establish specific personal jurisdiction, Grinnell asserts, this action must arise out of Grinnell's contacts with Montana, and that Grinnell's only activity in Montana during the relevant time period was reinsurance. (*Id.* at 23.) Since this action does not arise out of its reinsurance activities, Grinnell argues First National's breach of contract claim does not arise from or relate to any of Grinnell's Montana related conduct. (*Id.*)

### 1. Transaction of Business

Mont. R. Civ. P. 4(b)(1)(A) provides for specific jurisdiction over a defendant "if the claim arises from its 'transaction of any business within Montana.'" *Milky Whey, Inc.*, 342 P.3d at 18. In *Milky Whey*, the Montana Supreme Court emphasized Rule (4)(b)(1)(A)'s requirement that "the claim arise[] out of that person's transaction of business within the state." *Id.* at 20 (quoting *Grizzly Sec. Armored Exp., Inc. v. Armored Grp., LLC*, 255 P.3d 143, 147 (Mont. 2011)).

Here, First National's claim does not arise from Grinnell's transaction of business in Montana. Even though Grinnell may be viewed as "doing business"

15

in Montana, the Rule 4(b)(1)(A) analysis requires "the defendant's suit-related conduct [] create a substantial connection with the forum State." *Milky Whey*, 342 P.3d at 20 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (alteration added)). Grinnell's alleged breach of contract – the suit-related conduct at issue here – has no connection with Montana. Grinnell's activities in the state during the relevant time period were limited to reinsurance, which are unrelated to the policy at issue. First National's claim arises from the transaction of business within South Dakota: an insurance contract between a South Dakota resident and a South Dakota insurance agency (Parsons), who sold a policy on behalf of an Iowa insurance carrier, Grinnell. Montana has nothing to do with this transaction.

First National also points to correspondence sent to Grinnell by First National's counsel in April 2019, and a response received from Grinnell's counsel in Montana in May 2019, as evidence that its claim arises out of Grinnell's contacts with Montana. But this correspondence was exchanged after suit was filed against Grinnell on March 29, 2019. (*See* Doc. 17.) First National's claim against Grinnell can hardly be deemed to have arisen out of conduct that occurred after the action was filed.

Therefore, First National's assertion of Rule 4(b)(1)(A) specific personal jurisdiction over Grinnell based on the transaction of business in Montana cannot survive the "arising under" requirement articulated above.

## 2. Insuring Property in Montana

Rule 4(b)(1)(D) provides that any person contracting to insure any person, property, or risk located within Montana at the time of contracting is subject to personal jurisdiction as to any claim for relief arising from that contract. M. R. Civ. P. 4(b)(1)(D); *see also Seal v. Hart*, 50 P.3d 522, 527 (Mont. 2002).

First National argues that "Grinnell insured persons, property and risks in Montana when the Policy was issued." (Doc. 47 at 22.) First National asserts that "Grinnell knew vehicles insured under the Policy would be driven in Montana because Eric Carlson … was a resident of Montana … with a Montana driver's license[] and was listed as a driver of insured vehicles." (*Id.*) In support, First National relies on an exhibit showing covered drivers under Travis Carlson's Policy, dated June 27, 2016. (*Id.*; Doc. 47-2.) Among the covered drivers is Eric Carlson, who is identified as having a Montana driver's license. (Doc. 47-2.) First National also includes a LexisNexis-based Motor Vehicle Record Report for Eric Carlson to confirm his Montana driver's license. (Doc. 47-4.) Lastly, First National includes the Affidavit of Luciana Carlson, the widow of Travis Carlson, who attests that Travis's insurance agent was made

aware that his fencing company worked in Montana and kept business vehicles there.  (Doc. 47-5 at ¶¶ 3-7.)

In response, Grinnell points to representations made by Travis Carlson at the time of contracting that he was a South Dakota resident and the insured vehicles were garaged there.  (Doc. 42 at 28-29.)  Grinnell also proffers the underwriting file and the affidavit of Melanie Parsons, agent and owner of Parsons Insurance Agency, Inc., who obtained commercial insurance for Travis Carlson from Grinnell.  (Doc. 48-2 at ¶¶ 2-3.)  A review of the original commercial insurance application dated June 6, 2016 shows the "longest hauling distance" to be 400 miles; Eric Carlson as a licensed driver in Montana; and garaging addresses for all vehicles at 48033 277th Street, Canton, South Dakota.  (Doc. 48-1 at 7, 11, 13.)  Parsons attests that her company's files do not show any notations relating to Montana other than "one or more employees had a Montana driver's license."  (*Id.* at ¶ 5.)  Parsons further relates that Travis requested a change in the rating of his commercial vehicles in August 2016 to "intermediate status," which is defined as 51-200 miles from Canton, South Dakota.  (*Id.* at ¶ 7; *see also* Doc. 48-1 at 1.)  Canton is over 400 miles from Montana.  (Doc. 48-2 at ¶ 7.)

While there is a conflict in the evidence as to whether the Parsons Insurance Agency knew that the vehicles may be used in Montana for business

purposes, there is nothing offered to establish that either Travis or the vehicle ultimately involved in this tragic incident were in Montana at the time of contracting. First National offers no evidence to suggest that even if technically "garaged" in South Dakota, any vehicle involved in this incident (which are unidentified) was really in Montana at the time of contracting. All identifying information before this Court shows the vehicles in South Dakota at the time of contracting. Further, notwithstanding the averment of Luciana Carlson that "Travis's insurance agent was made aware" that Travis kept business vehicles in Montana "when he purchased commercial auto coverage from Grinnell Reinsurance," she doesn't identify the location of any of the insured vehicles at the time of contracting. (Doc. 47-5 at ¶¶ 5, 7.) Carlson attests that Travis's permanent residence was with her in Canton, S.D.; Travis travelled frequently to Montana for work, particularly to Carter County; that Montana was a base of operation; and vehicles were kept in Montana. (*Id.* at ¶¶ 2-5.) But without any evidence placing either Travis or any insured vehicle in Montana at the time of contracting, even temporarily, First National has not established a prima facie case for specific personal jurisdiction under Rule 4(b)(1)(D).

This case is similar to *Carter v. Mississippi Farm Bureau Cas. Ins. Co.,* 109 P.3d 735 (Mont. 2005), in many respects, and specifically with the application of Rule 4(b)(1)(D). In *Carter*, the plaintiff was involved in a two-

vehicle automobile accident in Montana. *Carter*, 109 P.3d at 736. The plaintiff settled with the other vehicle's insurer for policy limits, and then, like here, made a claim under the plaintiff's own automobile policy with Mississippi Farm Bureau Casualty Insurance Company ("MFBCIC") for underinsured motorist coverage. *Id.* at 736-737. MFBCIC denied coverage, and the plaintiff sued in Montana for declaratory relief. *Id.* at 737.

MFBCIC moved for summary judgment, asserting that it was a Mississippi corporation with no presence in Montana. *Id.* at 737, 738. It also asserted that it entered into the insurance contract when the plaintiff was a resident of Mississippi, and the policy reflected that the insured's vehicles were garaged in Mississippi. *Id.* at 738. The plaintiff countered he had previously resided in Montana and had returned to the state to live approximately three weeks prior to the accident and had been receiving his mail in there. *Id.* He also testified that prior to leaving Mississippi, MFBCIC's insurance agent advised him that there would not be any problems with coverage if he moved to Montana. *Id.* at 737, 738.

The district court granted summary judgment. *Id.* at 737. The Montana Supreme Court affirmed on appeal, in part based on the plaintiff's failure to establish a basis for asserting jurisdiction under Rule 4(b). *Id.* at 742. The Court observed "[t]he difficulty in the case before us is that [plaintiffs] do not offer any

basis under Rule 4(B)(1), M.R.Civ.P., for conferring long-arm jurisdiction over MFBCIC; in fact, they do not even cite the Rule in their argument." *Id.* But in considering whether jurisdiction could be established under Rule 4(B)(1)(d), the Court pointed out that "[i]t is undisputed that at the time of contracting, Carter resided in Mississippi, and the property to be insured under the contract was garaged in Mississippi. Thus, there was no basis for a finding of jurisdiction under this provision." *Id.*

The same is true here. The Policy reflects that Travis was a resident of South Dakota, and the insured vehicles were garaged in South Dakota. While First National has produced evidence that the vehicles may be used in Montana during the term of the contract, it has not produced any evidence to contradict Travis' residence or the location of the insured vehicles at the time of contracting.

### 3. *Farmers Ins. Exchange*

Having determined that there is no basis for asserting jurisdiction under Montana's long-arm statute, the Court need not consider the second step of the jurisdictional analysis and determine whether the exercise of jurisdiction comports with constitutional due process. Nevertheless, First National relies heavily on the Ninth Circuit's decision in *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911 (9th Cir. 1990), to establish jurisdiction.

*Farmers* involved a Canadian insurer, Portage, that insured a vehicle involved in an accident in Montana. *Farmers*, 907 F.2d at 912. The driver of the vehicle was insured by Farmers. *Id.* When suit was filed against the driver, Portage refused to defend. *Id.* Farmers, therefore, defended the driver, and agreed to settle the claim for the policy limits. *Id.* Farmers subsequently brought an action against Portage based on its refusal to reimburse Farmers for the settlement. *Id.*

The district court dismissed the claim for want of personal jurisdiction, but the Ninth Circuit reversed. *Id.* In doing so, the Court engaged in a due process analysis, and found that the exercise of jurisdiction over Portage would be reasonable. *Id.* at 913-915. The Court found that "automobile liability insurers contract to indemnify and defend the insured for claims that will foreseeably result in litigation in foreign states. *Id.* at 914; *see Rossman* [*v. State Farm Mut. Auto. Ins. Co.*], 832 F.2d [282,] at 286 [(4th Cir. 1987)]. Thus litigation requiring the presence of the insurer is not only foreseeable, but it was purposefully contracted for by the insurer." *Id.* at 914.

First National argues that the same conclusion should be reached here. It contends "[l]ike this case, in *Farmers* the insurer 'voluntarily contracted to provide insurance coverage for travel in Montana,' and 'allegedly had actual knowledge the vehicle would be driven in Montana.'" (Doc. 47 at 27-28.)

22

First National also acknowledges, however, that *Farmers* was followed by the Montana Supreme Court's decision in *Carter*. The Montana Court declined to apply *Farmers* in *Carter*, finding in *Farmers* "Portage arguably had an obligation to appear and defend the driver who had been sued in Montana as a result of an accident, while here, MFBCIC had no similar obligation to appear and defend because neither its insured or an omnibus insured was sued in this state." *Carter*, 109 P.3d at 741. The Montana Court explained it is important to differentiate between a case in which an insured is sued in a foreign state as the result of a car accident, and the situation involved here, where the insured is suing its insurer in a foreign state for breach of contract. *Id.* The former involves a question of indemnity, while the latter involves first-party coverage. The Court said these cases "are distinguishable on multiple levels." *Id.* In an indemnity situation, "the insurer is obligated by the terms of the policy to appear for and defend its insured, wherever an accident and resulting lawsuit occurs." *Id.* In the case of first-party coverage, however, "the place of the accident is immaterial for purposes of jurisdiction, as the action is one to enforce a contract." *Id.* at 741-42. In first-party coverage cases, the Court made clear "the question of whether the forum has personal jurisdiction of the other contracting party is a question that must be answered before – and separate and apart from – the inquiry into whether the contract is enforceable. *Id*. at 742.

Since the *Carter* decision, the Ninth Circuit has recognized that its decision in *Farmers* involved an indemnity dispute and does not apply in a situation where an insured is suing its insurer in a foreign state for breach of contract. *King v. American Family Mut. Ins. Co.*, 632 F.3d 570, n. 10 (9th Cir. 2011). This case involves a first-party coverage dispute, not an indemnity dispute. The reasoning in *Farmers* does not apply here.

Therefore, the Court declines to exercise specific personal jurisdiction over Grinnell.

### C.    Consent

Because personal jurisdiction is an individual right, a defendant can waive due process protections by express or implied consent to a court's personal jurisdiction. *DeLeon*, 426 P.3d at 5; *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). Aside from either general or specific jurisdiction, "consent jurisdiction is an independent basis for jurisdiction." *DeLeon*, 426 P.3d at 5-6. The appropriate inquiry "turns on the facts and circumstances of the case and the nature and terms of the waiver, that is, whether the defendant knowingly waived its constitutional due process protections." *Id.*

A litigant may consent to the jurisdiction of a court in a variety of ways. *Ins. Corp. of Ir.*, 456 U.S. at 703. For one, consent can be based on compliance with state business registration statutes, but whether compliance with such a

statute constitutes consent is a question of state law. *King*, 632 F.3d at 575

("federal courts should look first and foremost to a state's construction of its own

statute to determine whether appointment of an agent for service of process is a

sufficient basis for the exercise of personal jurisdiction over a foreign

corporation."). In Montana, a foreign corporation registering to do business does

not amount to consent of personal jurisdiction. *DeLeon*, 426 P.3d at 9. This

includes the appointment of a registered agent. Mont. Code Ann. § 35-7-115.

Instead, a foreign corporation must be put on notice that its actions might be

construed as consent to personal jurisdiction. *DeLeon*, 426 P.3d at 6 (citing

*WorldCare Ltd. Corp. v. World Ins. Co.*, 767 F.Supp.2d 341, 355 (D. Conn.

2011)).

     Here, First National argues that Grinnell expressly consented to personal

jurisdiction as an accredited reinsurer under Montana's reinsurance regulation

statute. (Doc. 47 at 15-18.) First National relies on Mont. Code Ann. § 33-2-

1216 (5)(e)(ii)(C), which establishes the requirements to become certified as a

reinsurer within the state, and provides in pertinent part:

> To be eligible for certification … an assuming insurer must be
> domiciled and licensed to transact insurance or reinsurance in a
> qualified jurisdiction … and shall:
>
> (C) agree to the jurisdiction of this state[.]

Mont. Code Ann. § 33-2-1216 (5)(e)(ii)(C).

First National also asserts that Grinnell impliedly consented to personal jurisdiction because of its' status as an accredited reinsurer, which requires significant contact with the State of Montana. (Doc. 47 at 20.) In support, First National points to Grinnell's $2.5 million reinsurance business in the state, and again asserts the requirements of Mont. Code Ann. § 33-2-1216. (*Id.* at 20-21.)

Grinnell argues that it did not consent to jurisdiction in Montana by registering to do business there,[4] nor did it offer wholesale consent under Montana's reinsurance statutory scheme. (Doc. 42 at 17-22.) Grinnell emphasizes language in § 33-2-1218, a companion reinsurance statute, which limits application of §§ 33-2-1216 and -1217 "to all cessions … under reinsurance agreements." (*Id.* at 20.) Grinnell also points to the State of Montana's Application for Accredited Reinsurer Status Form AR-1, Certificate of Assuming Insurer, which includes the following language:

> I … the assuming insurer under a reinsurance agreement(s) … hereby certify that [name of assuming insurer] 1. Submits to the jurisdiction of any court of competent jurisdiction in Montana for the adjudication of any issues arising out of the reinsurance agreement(s) …

(Doc. 48-3 at 2.) Grinnell argues that the jurisdictional limitation found in Form AR-1 is presumed to be controlling because it reflects the Montana Commissioner of Securities and Insurance's interpretation of the state's

---

[4] The Court need not entertain Grinnell's first argument considering the Montana Supreme Court's holding in *DeLeon*, 426 P.3d at 9.

reinsurance statutes. (Doc. 48 at 12.) In support, Grinnell cites to *Christenot v. State*, 901 P.2d 545, 548 (Mont. 1995), for the proposition that "[a]n administrative agency's interpretation of a statute under its domain is presumed to be controlling."

The Court agrees with Grinnell that it did not consent to general jurisdiction in Montana, but for different reasons. In interpreting Montana statutes, the Montana Supreme Court has often repeated the principle of statutory construction that statutes are to be construed "by reading and interpreting the statute as a whole, without isolating terms from the context in which they are used by the Legislature." *Totem Beverages, Inc. v. Great Falls-Cascade County City-County Board of Health*, 452 P.3d 923, 927 (Mont. 2019). In other words, "[s]tatutory construction is a holistic endeavor and must account for the statute's text, language, structure and object. [A court] must also read and construe each statue as a whole so as to avoid absurd results and to give effect to the purpose of the statute." *Id.*

Mont. Code Ann. Title 33, Chapter 2, Part 12 regulates the amount of risk an insurer may retain, and the credit an insurer will receive in that calculation for ceding reinsurance to another insurer. Mont. Code Ann. § 33-2-1201(1) provides that "[a]n insurer may not retain any risk on any one subject of insurance . . . in an amount exceeding 10% of its surplus to policyholders." Subsection (3) of that

statute further provides that "[r]einsurance ceded as authorized by this part must be deducted in determining risk retained." The purpose of Mont. Code Ann. § 33-2-1216 is to establish the circumstances in which a domestic insurer will be allowed credit for reinsurance ceded in determining risk retained. In order to receive any credit under the statute, reinsurance must be ceded to an assuming insurer who is accredited by the commissioner of insurance as a reinsurer in the state. In order to become accredited, the reinsurer must meet certain criteria, including that the insurer "agree to the jurisdiction of this state."

Therefore, the focus of § 33-2-1216 is very narrow. It only pertains to the issue of credit for reinsurance ceded to another insurer. In order to receive credit, the statute ensures that the reinsurer will be subject to a Montana court's jurisdiction. Given the narrow scope of the statute, the scope of the consent required under the statute should similarly be narrowly interpreted to conform to the purpose and intent of the legislation. The Montana legislature had no reason to require that a reinsurer be subject to general jurisdiction in Montana, when its only purpose was to make sure the insurer was subject to jurisdiction for any claims arising out of reinsurance agreements entered into in the state. Interpreting the statute as suggested by First National would require that the reinsurer subject itself to general jurisdiction in the state. That is, it would be subject to jurisdiction in Montana for any suit brought by any party relative to

any dispute that occurs anywhere in the United States, regardless of whether it has any relationship to the state. Such an interpretation would plainly be beyond the purpose and intent of the legislature in requiring jurisdictional consent under the statute.

As mentioned above, Grinnell also proffers its own Certificate of Assuming Insurer, showing it consented to the jurisdiction of any court of competent jurisdiction in Montana for "any issues arising out of the reinsurance agreement(s)." (Doc. 48-4.) While the Court disagrees that the form may be considered tantamount to an administrative agency's formal interpretation of the statute, it is certainly a reasonable interpretation.

For many of the same reasons, it cannot be found that Grinnell impliedly consented to general jurisdiction in the state. The Montana Supreme Court has recognized that while consent may be implied, "'the implication must be predictable and fair.'" *Deleon,* 436 P.3d at 6 (quoting *Worldcare Ltd. Corp v. World Ins. Co,* 767 F.Supp.2d 341, 355 (D. Conn. 2011)). "Essentially, a defendant must be on some sort of notice that its action may be construed as consent to personal jurisdiction." *Id.* Given the limited scope and purpose of reinsurance statute, Grinnell would not have understood that it was waiving its constitutional due process protections and consenting to general jurisdiction in Montana. This is particularly true in light of the certification form provided by

the state which limits the consent to "the adjudication of any issues arising out of the reinsurance agreements."  (Doc. 48-4.)

Thus, First National fails to establish consent jurisdiction over Grinnell because this dispute has not arisen under a reinsurance agreement.  The dispute at issue stems from a commercial lines policy between Travis Carlson and Grinnell, who happens to be an accredited reinsurer in Montana.  *See* 1A Couch on Ins. § 9.2.  While Grinnell has consented to personal jurisdiction for controversies arising out of their Montana reinsurance agreements, that is not the case here, and Grinnell's consent cannot be extended to "causes of action arising from dealings entirely distinct from those activities."  *International Shoe*, 326 U.S. at 318.

### D.     Conversion to Summary Judgment

First National argues that this motion cannot be granted without allowing additional discovery because Grinnell attached "material extraneous to the pleadings" that converts Grinnell's motion for dismissal into a motion for summary judgment.  (Doc. 47 at 34.)  First National relies on the language of Fed. R. Civ. P. 12(d), which states:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

First National's argument is inapplicable because Grinnell's motion was brought under Fed. R. Civ. P. 12(b)(2). "When adjudicating a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(2), a court may consider extrinsic evidence—that is, materials outside of the pleadings, including affidavits submitted by the parties." *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 951 (N.D. Cal. 2015)

Therefore, the Court will not convert this motion to summary judgment.

### E.  Jurisdictional Discovery

First National also requests the opportunity to conduct jurisdictional discovery to establish a basis for personal jurisdiction.  (Doc. 47 at 33.)  Grinnell opposes the request.  (Doc. 48 at 14-15.)

Where material jurisdictional facts are disputed, the district court has discretion to permit discovery to resolve factual issues.  *Bunch v. Lancair Int'l*, 202 P.3d 784, 799 (Mont. 2009) (citing *Minuteman Aviation Inc. v. M.R. Swearingin*, 772 P.2d 305, 308-09 (Mont. 1989)); *Data Disc, Inc.*, 557 F.2d 1280.  In granting jurisdictional discovery, the trial court has broad discretion. *Data Disc*, 557 F.2d at 1285 n.1.  Jurisdictional discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."

*Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inc., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quotations and citations omitted).

In this case, however, the material jurisdictional facts relative to the jurisdictional issues are not disputed. As discussed above, there are disputed facts concerning whether Parson's Insurance Agency had knowledge of the use of the insured vehicles in Montana, and whether and to what extent the insured vehicles may have been used in the state. But these facts were not material to the Court's decision. Even when resolving any conflicting evidence in First National's favor, jurisdiction is not shown.

Further, First National has not explained what it expects discovery might reveal, or how such discovery might result in facts that would establish personal jurisdiction. "In order to obtain leave to conduct jurisdictional discovery, Plaintiffs must make a preliminary showing of jurisdiction. They must specify what facts they expect to uncover during discovery and how those facts would support personal jurisdiction." *Chapman v. Krutonog*, 256 F.R.D. 645, 648 (D. Haw. 2009); see also *Does 1-144 v. Chiquita Brands International, Inc.*, 285 F.Supp.3d 228 (D.D.C. 2018) ("Jurisdictional discovery is justified if a party makes a detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce.") (Internal quotations and citations omitted.) First National has made no such showing here.

**III. CONCLUSION**

Based on the foregoing, **IT IS ORDERED** that Grinnell's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 41) is **GRANTED.** Counts 5 and 6 of the Second Amended Complaint are dismissed without prejudice.

**IT IS ORDERED**.

DATED this 24th day of March, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge